# United States District Court

## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

APR 2 5 2011

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**UNITED STATES OF AMERICA**
v.

**ROBERT RAYMON BIGGS**
DOB 9-4-61

**CRIMINAL COMPLAINT**

Case No.: 1-11-MJ-609

I, Wendi Stewart, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about April 19, 2011, in DeKalb County, in the Northern District of Georgia, defendant, **ROBERT RAYMON BIGGS**, did knowingly and intentionally possess with the intent to distribute a controlled substance, that is, 3,4-Methylenedioxymethamphetamine, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

I further state that I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, and that this complaint is based on the following facts:

Please see attached affidavit.

Continued on the attached sheet and made a part hereof.    (x) Yes ( ) No

_____
Signature of Complainant
ICE SA Wendi Stewart

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendants have committed it. Sworn to before me, and subscribed in my presence

| April 25, 2011 | at | Atlanta, Georgia |
|---|---|---|
| Date | | City and State |

JANET F. KING
United States Magistrate Judge
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

AUSA Michael V. Herskowitz

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Wendi Stewart, Special Agent of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), being duly sworn under oath, hereby state that the following is true and correct to the best of my knowledge and belief:

### INTRODUCTION

1. I am the Affiant herein and an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 18, United Stated Code, Section 2516.

2. I am an ICE Special Agent and have been so employed since May 2009. In that capacity, I have completed the Criminal Investigator Training Program and ICE Special Agent Training at the Federal Law Enforcement Training Center ("FLETC"). I am currently assigned to the ICE Atlanta Organized Crime Drug Enforcement Task Force ("OCDETF") Strike Force, Group 2, located in Atlanta, Georgia. My duties and responsibilities include the investigation of civil and criminal violations of the United States Code. Prior to my Special Agent position with ICE, I was

employed as a Police Officer with the City of Rome, Georgia for thirteen years.

3. As an ICE Special Agent, I have conducted investigations into the unlawful possession with intent to distribute controlled substances; the unlawful importation of controlled substances; and the laundering of monetary instruments, monetary transactions involving property derived from specified unlawful activities and associated conspiracies; in violation of Title 21, United States Code, Sections 841, 846, 952, and 960, and Title 18, United States Code, Sections 1956 and 1957. I have also received specialized training in the investigation of drug trafficking and drug organizations, interviewing techniques, financial and money laundering investigations, and the use of electronic surveillance. I am personally familiar with and have used many of the traditional methods of investigation, including but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, interrogation, and undercover operations.

4. I have written and participated in the execution of search warrants seeking, and resulting in the discovery of large amounts of illegal drugs and currency, packing implements, paraphernalia involved in the distribution of illegal drugs, drug records and assets representing the wealth

derived from the sale of illegal drugs. Based upon my training and experience in the investigation of drug trafficking organizations, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones, text messaging and calling cards to facilitate drug activity; and their use of numerical codes and code words to conduct their transactions.

5. This Affidavit is submitted in support of a criminal complaint against Robert Raymon BIGGS ("BIGGS") for violation of federal drug laws, namely possession with the intent to distribute 3,4-Methylenedioxymethamphetamine (ecstasy), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). This affidavit is being filed based on personal and other law enforcement personnel's knowledge, observations, and of records, reports, and information from ICE and other law enforcement agencies. This affidavit is intended to support probable cause but is not intended to convey all the facts of the entire investigation.

## PROBABLE CAUSE

6. On April 15, 2011, the Ontario, Canada Provincial Police (OPP) contacted the Buffalo Border Security Enforcement Task Force (BEST) and stated there was a commercial shipment containing ecstasy that was scheduled to be shipped to Atlanta, Georgia. OPP seized 270,000 tablets of ecstasy that were concealed in boxes in a crate manifested as crushed glass. OPP, in coordination with Buffalo BEST and Customs and Border Protection (CBP) Field Operations, allowed the shipment to proceed to the U.S. without the ecstasy.

7. The shipment (then consisting of empty boxes) crossed at the Peace Bridge on April 16, 2011 at 2241 hours being hauled by FGM Truck Line. ICE was on-site and placed a tracker on the commercial truck. OPP and BEST Buffalo conducted interviews with the shipper, consignee, and trucking company and determined that none of these parties have knowledge or are involved in this smuggling attempt. On April 18, 2011, OPP officers arrived at the Peace Bridge with approximately 13,000 of the seized pills of ecstasy. The ecstasy field-tested positive.

8. On April 18, 2011, the FGM tractor trailer entered Atlanta, Georgia, and attempted to deliver the crate to the crate end destination at South River Properties, 1140 S. River Industrial Blvd., Atlanta, Georgia.

The property owner advised the truck driver that the delivery could not be made until April 19, 2011. I learned that there have been two prior deliveries similar to the present delivery. Namely, the past two deliveries have been sent from Canada and presented on the invoices as crushed glass. A black male named "Shawn Williams" had picked up both past deliveries. He picked up one of the deliveries with a U-Haul truck and the second delivery was picked up with a white van. On April 18, 2011, "Shawn Williams" attempted to pick up the current delivery with a U-Haul van. An employer for the company advised him that he would have to return on April 19, 2011 to pick up the delivery.

9. On April 19, 2011, Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) agents conducted surveillance of 1140 S. River Industrial Blvd, Atlanta, GA 30315, at approximately 11:00 AM.

10. At approximately 4:08 PM, agents observed a white van with two black males, Georgia tag number BC9K63, arrive at the location and pick up the crate. Several minutes later, ICE SA Silka observed the vehicle exit Moreland Ave on to Interstate I-285. SA Silka followed the vehicle to the Royal Automotive/Heavy Duty Mechanic Company located at 1790 Rogers Lake Road, Lithonia, Georgia. At approximately 4:43 PM, the

vehicle entered the automotive company lot and pulled to the back left side of the building.

11. The crate was wired so that once it was opened, law enforcement would be notified. At approximately 6:05 PM, agents were informed that the crate had been opened. SA Silka arrived at the location of the crate and observed the top portion of the crate had been opened. The crate was in the back of a large box truck in the rear portion of the Royal Automotive/Heavy Duty Mechanic Company. Several agents stated that a black male wearing a black shirt and jeans was observed running into the woods after the crate was opened. Agents attempted to locate the person that ran into the woods and were unsuccessful.

12. The owner of the Royal Automotive/Heavy Duty Mechanic Company, Robert McClear, stated that the box truck that the crate was located in was owned by BIGGS. A yellow sticky note with the name Bigis and the number 4/917-7226 was located on the desk of McClear.

13. BIGGS was present at Royal Automotive/Heavy Duty Mechanic when the crate was opened. I advised BIGGS of his Miranda rights by reading the Miranda rights form to BIGGS. BIGGS agreed to waive his rights verbally and by signing the Miranda Rights form. BIGGS initially claimed to have no knowledge of the crate that was located in the

box truck, and stated that he (BIGGS) had no vehicles present at the shop. BIGGS later recanted and stated that the box truck where the crate was discovered was his, and that he (BIGGS) was knowledgeable about the crate. BIGGS stated that a friend of his from Jamaica, known only by the name of "Troy" was currently living in Canada. On a previous occasion, Troy called BIGGS from Canada, and informed BIGGS to make sure that a box was transferred. BIGGS stated that the box he (BIGGS) was attempting to transfer on April 19, 2011 was also being done under Troy's instructions.

14. Several months earlier, Troy also used BIGGS to transfer a box that was sent from Canada to Atlanta. BIGGS stated that after the first transfer was successful, Troy promised to pay BIGGS $2,000 dollars, and BIGGS believed that he (BIGGS) would receive approximately $2,000 for ensuring the box was delivered on April 19, 2011. BIGGS stated that he did not know the exact contents of the box, but that it was some type of illegal item, and that is why Troy was willing to pay BIGGS $2,000 per box.

15. BIGGS stated that he was unsure exactly when the crate was moved into his box truck. BIGGS stated that he was at the Mechanic Company in order to transfer the box to an unknown person from Florida. Once law enforcement arrived at the business, BIGGS knew that law enforcement was coming for the box, and BIGGS threw his phone in an

effort to hide the phone from the police. BIGGS stated that the phone that he threw was phone number 404-917-7226, and that he also had a phone with the number 772-224-7091.

16. Agents later located a cell phone assigned 404-917-7226 near the area that BIGGS claimed to have thrown the phone. The battery was removed from the phone, and also found in the area where BIGGS claimed to have thrown the phone.

17. BIGGS agreed to cooperate with law enforcement, and stated that he (BIGGS) could call Troy in the morning and discuss the raid that took place at the mechanic shop. BIGGS was told to come to the ICE office in Atlanta on April 20, 2011. BIGGS was released, but he did not come to the office as promised. BIGGS' whereabouts are unknown at this time and it is suspected that he may try to enter into Canada.